Judge Marshall
delivered the opinion of the Court.
This action of trespass was brought by Gouge against Simon and three others for entering upon the plaintiffs close in the county of Grant. The defendants pleaded ‘not guilty,’ and also a license from one De Bovis in whom the freehold was alleged to be. A verdict and judgment were rendered against the defendants for ninety-six .dollars, and they have appealed to this Court.
The place in which the alleged trespass was committed is within the interference between the older patent of Phillips and Young for 56,000 acres, and the junior patent of Todd for 91S7-J- acres. The plaintiff is understood to claim under this latter patent, but shows no *157 derivation of title. For the purpose of showing boundary he read a bond from Todd, which is not copied in the record, and a deed from one Bartlett dated in 1833, for COO acres of land within the patent of Todd which was also read, all of which covered the locus in quo. He also proved a possession of many years claiming to the extent of the bond and afterwards of the deed, but his residence and actual close was outside of the boundary of the elder patent until at some indefinite period probably between ]835 and 1839, he extended his improvement across that boundary and enclosed one half or three fourths of an acre within it.
Character oí de* iendant’s claim.
The evidence on the part of the defendants conduced to prove that as early as 1818, an agent for Moses L. Moses, claiming under the patent of Phillips and Young had executed a lease for the whole 50,000 acres to one Holbrook, then living on the land as a squatter. That Holbrook accepted the lease and continued to reside in the same tenements until his death in 1831; after which his widow remained in the same tenements for several years, when one Taylor purchased the improvement from her, sold it to another, repurchased it and continued in possession until 1835 or 1836 or 1837 when it was surrendered to the agents of the claimants under Phillips and Young, and the defendant Simon as agent for De Bovis who was one of these claimants took the possession and has continued to reside at the same place ever since. The defendants also read the patent of Phillips and Young and the record of a suit in chancery in which Moses L. Moses was complainant and B. P. Oruger and others among whom were the unknown heirs of Phillips and of Young were defendants, and in which there was a decree upon regular affidavit and publication for a conveyance, and a deed by commissioner dated in 1835, and approved by the Court conveying the title of the defendants in the 56,000 acre patent with certain exceptions to the complainant. They also read a deed from Moses L. Moses to-De Bovis dated in 1835, after the commissioner’s deed, conveying the *158 same laud with the same and other exceptions, and also read a general power of attorney from De Bovis to Simon, authorizing all legal acts for the protection and advancement of his interest in the land. The exceptions in these deeds were proved hot to cover the land now in controversy.
Plaintiff lo main Lain trespass qnnre chtu-sum fugU, must have the-possession at the (laic ol the trespa>s — an on try under a junior patent outside oí the interference, does not give a possession of the inter f arenen, though i l be made* Aviih the intention of ta-lcing possession of the j unior patent to the extent of its boundary. But a possession under the eider patent givers possession of all within its bounds not already possessed in the same county in which the entry i,< made; though a prior entry under a junior patent within the ]«p with intent to take possession of jt will give a possession [o the extent of the interference.
*158 It was proved that in 1818, the place at which Hol-brook lived was in the county of Pendleton which then included also the locus in quo and all the land now in contest; but that in 1819, the Legislature established the county of Owen, the line of which ran between Holbrook’s and the land on which the trespass was committed, leaving Holbrook’s place in the county of Owen. And that in 1820, tne county of Grant, was established including within its boundary the locus in quo, and lea ving Holbrook’s residence still in Owen. Whether Simon has at any time extended his actual dose within the county of Grant is uncertain. But it appears that no entry was ever made under the elder patent within the boundary of Gouge’s bond'or deed prior to the entry which is complained of as a trespass.
Under the issue on the plea of not guilty it devolved upon the plaintiff to prove that he was in possession of the land when the defendants entered upon it. His entry outside1 of the older patent though evidenced by an actual close and continued residence, and made under claim of title to land extending within that patent and with the intention and claim of being possessed to the extent of his own boundary, did not give him possession of any part of the interference, though there may have been no possession either of the interference, or elsewhere under the elder patent. But an entry under the elder patent on any part of it with intent to take possession of the whole gives possession of all the vacant land within the patent boundary and in the samecounty in which the entry was made, although there be a junior patent covering part of such vacant land, and a possession under it outside of the interference. A prior entry however of, or under'the 'junior patentee within the interference with intent to take possession of it, would *159 give possession to the extent of the interference which would not be divested or disturbed by a subsequent entry under the elder patent outside of the interference.
An entry upon a possession under the elder patent, by a junior paí-tenme, Aic. with in the interference, does not divest the posses sion under the eider patent beyond I he actual en c 1 o s u re, though thejunior patentee may have been previously possessed outside of the interlerenoe claiming to the boundary of his pulen t.
The principle that the purchaser of land adjoining a tract of which he has actual possession acquires by his purchase the possession of the land purchased, does not apply so as to extend his possession originally outside of an elder patent, to land within that patent, unless it was in the possession of the vendor, or unless the ven-dee actually enters upon it. And if the elder patentee has the possession of his land though by entry or enclosure outside of the interference the subsequent entry of the junior patentee within the interference does not divest the prior and existing possession beyond the actual close of the junior patentee though he may have been first possessed outside of the interference claiming to the boundary of his patent. But although the entry of the junior patentee is thus limited by his actual close, yet if his entry was made for the purpose of taking possession of the whole interference and be continued under claim of being so possessed, his possession might be extended to the whole or any part by the withdrawal-or abandonment or other cessation of the possession under the elder patent.
Then the question whether, at the time of the trespass, the plaintiff had possession of the place, depends upon the question whether, when he extended his improvement over upon the interference, it. was in possession under the elder patent, and whether, even if it was, that possession was afterwards withdrawn! or abandoned, or had otherwise ceased before, the entry complained of. If the lease to Holbrook was for the whole 56,000 acres, or was unlimited, and was made and accepted for the purpose of taking and holding possession for the lessor claiming under the elder patent, to the extent of its boundaries, the possession was thereby acquired of all the land included-in the patent, which was in the same county, which was. not in possession of others, and not covered by an older patent. And as the land now in contest was *160 then vacant, not covered by an older patent, than that of Phillips and Young, and within the same county with the actual close and residence of Holbrook, it was embraced within the possession thus acquired for the elder patent. If the lease was not of this character but was limited and did not include the land in contest, then of course no possession of this land was thereby acquired. And as at the time when the tenement which had been occupied by Holbrook was surrendered to the claimants under the elder patent it was in a different county from that in which the disputed land was, and is included, no possession of this disputed land was acquired by the surrender or by any act of the surrenderee done in any other county than Grant in which that land is situated ; and no possession could be acquired for or under the elder patent even of vacant land in the county of Grant, except by an entry within that county. In that state of case the extension of the plaintiff’s improvement or enclosure over upon the interference gave him possession to the extent of his boundary, and was sufficient to sustain this action unless the entry of the defendants for which it was brought was justified by title or license.
The creation of a new county & ¿¡vid »g a toad of hind in pos session does not have the effect of divpsun? a legal possession.
But if Holbrook’s lease was as at first supposed unlimited and such as to give a possession of all the vacant land in the patent of Phillips and Young, we are of opinion that the subsequent division of the county of Pendleton so as to separate by the county line, the premises occupied by Holbrook from the land in contest, did not have the effect of limiting the extent of his existing possession, but that although his residence was thus thrown into the county of Owen leaving this land in the county of Pendleton, and afterwards in the county of Grant, no new entry or act was necessary in either Pendleton or Grant in order to give or continue his possession to its original extent. Upon this point the instruction given by the Court to the jury is in direct conflict with the opinion just stated, and is therefore deemed erroneous to the prejudice of the defendants. *161 The question whether the lease (which was not produced,) was limited or unlimited, and for what purpose it was made and accepted, was one of fact, to be decided by the jury. Herndon the only witness who deposed to its contents represented it as being for the whole tract, and that Holbrook agreed to hold and did hold under it. The testimony of this witness was impeached by a witness who stated that on a former occasion Herndon had sworn that he did not recollect 'whether the lease to Holbrook was for the whole claim or only for his improvement, and by another witness who said that Herndon had sworn on the former occasion, that the lease to Holbrook was just like the others, and he believed he said ihat it provided that Holbrook should have the privilege of purchasing 100 acres of land. The instruction given by the Court, “that if the jury believed from the evidence, that the lease to Holbrook was confined to his improvement or enclosure, with the privilege of purchasing 100 acres, his possession did not extend beyond his improvement,” seems to have been based upon this impeaching testimony; since there was no direct evidence of the contents of the lease but that of Herndon, ¿iven in this case and on this trial, and certainly no direct evidence of its providing for the purchase of 100 acres. The instruction as given was calculated to make the impression on the jury that they might regard this evidence of what the defendant’s witness had formerly stated or his former statement itself, as direct proof of the contents of the lease, when in truth its only tendency was to discredit Herndon, and to weaken or destroy the effect of his statement made on this trial. If the jury believed the evidence of Hern-don given in this case, it authorized them to find that the lease was unlimited and made for the purpose of taking possession of the whole tract. If they did not believe it, there was no evidence of an unlimited lease, nor of a possession co-extensive with the patent, acquired thereby, and the defendants failed in making out that part of their case. This instruction appears to be misleading.
A tenant placed in possession of a large tract of land, & died upon it, left a family, they were still in possession as the head of the family had been for the landlord — no act of abandonment appearing,
If a lease of the whole patent or without limits was made by persons acting for xhe patentees or those entitled under them to Holbrook, and was accepted by him while residing on the land, it would be presumed to have been made with intent to take possession of the whole, and had the effect of gaining such possession under the exceptions above stated. And such possession if continued up to the time of the surrender to the claimants or their agents in 1835-6, or 7, passed by the surrender to said agents, and so far as the present contest is concerned, to Simon, notwithstanding the intervening county lines; and while it so continued, as it might do by the continued residence and claim of Simon, it repelled any constructive extension of the plaintiff’s possession within the elder patent, and confined it to his actual close.
To whatever extent the possession was originally held by Holbrook under the lease, we are of opinion that it was not restricted to narrower limits by the death of Holbrook, leaving his widow in possession of bis improvement, nor by her sale of the improvement to Taylor, who though he purchased nothing else, cut •wood and timber as he pleased. The improvement was the only valuable or vendible part of the possession that -the tenant could dispose of. The possession outside of the improvement was for the lessors if not in them, and ■may-have continued as the tenement to which it was .attached was held by their tenant or under or for thems unless there should be some fact authorizing .the conclusion that the constructive possession had been lost or •relinquished. The absence, from the time of the exe- ■ cution of the lease for many years, of any recognition by lessor or lessee of the existence of such a lease or of such a tenancy and extensive possession as have been referred -to, and the failure to show any act done by either, asserting or evidencing such a tenancy and possession, and the sale of the improvement might tend to prove, that no such lease had been authoritively made and no such possession acquired; or that if acquired, it *163 had been expressly or tacitly relinquished, and existed only to the extent of the actual enclosure of the Hol-brook tenement when it was surrendered by Taylor some seventeen or eighteen years after the date of the alleged lease. It would seem that there should be some length of time which would authorize the inference that a constructive possession had ceased or been relinquished, which though extending to thousands of acres in different counties, is attached to a small tenement and sustained only by the occupancy of that tenement by a tenant without any other assertion or evidence of the extended possession than may be inferred from a lease in his pocket lost or destroyed, and never shown or spoken of after its execution, and not produced on the trial. And although it cannot be decided as matter of law that a presumption of relinquishment arises from such facts, we are inclined to the opinion that a jury would be at liberty, in the absence of opposing circumstances to find whether or notin view of all the circumstances, the constructive possession had been relinquished by the lessor.
Upon this branch of the subject no question was made on the trial so far as appears from the instructions given and refused, except as to the effect of the sale of Holbrook’s improvement. But in the instruction that the constructive possession was narrowed down by the county lines separating Holbrook’s tenement from the land in dispute, and the instruction that if Taylor purchased the improvement of Holbrook, his possession was confined to the improvement, the Court in effect decided that there was no possession under the elder patent within the county of Grant, as a consequence of the continued occupancy of the Holbrook tenement in Owen. Under these instructions, both of which are' deemed erroneous, the jury was bound to find that the' plaintiff was in possession of the interference when Simon and the other defendants made the entry complained of, and the defence rested solely on the question of a license justifying the entry.
A conveyance made in compliance witli a valid contract, made when there is no adverse posses-sioe is not within the champerty laws.
In making out their defence on the ground of license from Debovis, it was necessary that the defendants should show not only authority from him, but also title in him to make and authorize the entry upon land in the plaintiff’s possession. Prima, facie, the decree, the commissioner’s deed from the unknown heirs of Phillips and Young, and others, to Moses L. Moses, the deed from him to Debovis, and the power of attorney from Debovis to Simon, are amply sufficient to show title in Debovis and authority from him to Simon to enter under that title.
But it was objected that the deed from Moses to De-bovis did not pass the title to the land now in dispute, if, when it was made, the plaintiff Gouge was in the adverse possession of the interference, and several instructions were given upon this subject. The objection was certainly valid if the possession was adverse at the date of the deed and so far as it was adverse, unless the deed was made in pursuance of a binding contract, made when there was no such adverse possession.— But supposing no such previous contract, the question of the state of the possession at the date of the deed depends upon precisely the same principles that have been already stated as affecting the state of the possession at the time of the trespass complained of. And upon this subject the Court not only committed the errors before noticed, but also erred in the instructions which apparently authorized the jury to conclude that if at, and before the date of the deed to Debovis, the plaintiff was in possession under his bond or deed claiming to the extent thereof, this was such an adverse possession of the entire interference, as rendered the deed to Debovis champertous and ineffectual to pass the land in contest. To support this conclusion it was necessary, not only that thefact just stated should have existed at the date of the deed, but that the plaintiff should have extended his close into the interference, and that at the time of the extension or afterwards, before the date of the deed, there should have been no possession *165 of the interference under the elder patent. Whether there was or was not such possession under the elder patent, depends upon facts and principles already considered and explained. In the instruction now under notice, the necessity of an entry by the plaintiff upon the interference and the question of possession under the elder patent, and the facts and principles involved in it seem to have been left out of view. And in giving and refusing other instructions which relate to them, the Court seems to have acted on views inconsistent with this, opinion. These instructions were numerous and it is not necessary to state them in detail. We remark’. however, that it was not necessary in order to sustain the defence under the general issue, that the title should have been in Debovis, as one of the instructions assumes. If the plaintiff was not in possession when the entry complained of, was made, he cannot maintain the action. And if Debovis had not the legal title by the deed, his agent might have been in possession for him or for his grantor to the extent of its boundary.
Lindsey and Gurry for appellants; Wall and J. Trimble for appellee.
No question as to the effect of the seven years limitation under the act of 1809, is made in the instructions, and none arises necessarily on the record. But for the errors above noticed, the judgment is reversed and the cause remanded for anew trial in conformity with this .opinion. And we suggest that the ease should be explicitly disposed of as to the defendant who was not served with process.